**IN THE UNITED STATS DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHEYANNE HORNE,** | : | |
| | : | |
| ***Plaintiff,*** | : | |
| | : | **Case No.: 2:24-cv-1497-MJH** |
| **v.** | : | |
| | : | |
| **UPMC d/b/a UPMC CORPORATE** | : | |
| **SERVICES, UPMC HEALTH PLAN,** | : | |
| **INC., and UPMC MAGEE-WOMEN'S** | : | **JURY TRIAL DEMANDED** |
| **HOSPITAL,** ***jointly and severally,*** | : | |
| | | |
| ***Defendants.*** | | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

AND NOW, comes Plaintiff, Cheyanne Horne, by and through the undersigned counsel, J.P. Ward & Associates, LLC, and, specifically, Justin M. Bahorich, Esquire, who files the within Brief in Opposition to Three (3) Motions to Dismiss Plaintiff's First Amended Complaint filed by Defendants, UPMC d/b/a UPMC Corporate Services, UPMC Health Plan, Inc., and UPMC Magee-Women's Hospital, of which the following is a statement:

Defendants UPMC Health Plan ("Health Plan"), UPMC Corporate Services ("Corporate"), and UPMC Magee-Women's Hospital ("UPMC Magee") (collectively, "Defendants") move to dismiss various counts of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Each motion relies heavily on premature factual arguments, an overly narrow reading of Plaintiff's administrative charge, and an improper application of the pleading standard. Plaintiff Cheyanne Horne has plausibly alleged pregnancy discrimination, disability discrimination, failure to accommodate, and retaliation under Title VII, the ADA, the PHRA, and

the FMLA. The Amended Complaint is well-pled, grounded in specific factual allegations, and supported by legal precedent. Defendants' motions should be denied in full.

## I. STATEMENT OF FACTS

### A. Employment at UPMC Corporate and Initial Charge of Discrimination (2019–2021)

Plaintiff Cheyanne Horne ("Ms. Horne") began working for Defendant UPMC Corporate on February 4, 2019. (Am. Compl. ¶ 6). Ms. Horne is a qualified individual with disabilities, including Complex Post-Traumatic Stress Disorder (CPTSD), panic disorder, Premenstrual Dysphoric Disorder (PMDD), ADHD, and depression. (¶¶ 7–9). These conditions substantially limit several major life activities, including but not limited to, concentrating, sleeping, communicating, and breathing. *Id.*

In April 2021, while working at the UPMC Magee location, Ms. Horne encountered a former assailant, triggering a severe panic attack. (¶¶ 10–14). She requested a transfer to the Center for Women with Disabilities Clinic as a reasonable accommodation. (¶ 16). Although initially told she would receive training to transition into the unit, UPMC refused to send her after another employee completed their rotation. (¶¶ 17–19).

Ms. Horne then learned that UPMC had disclosed her full name to the individual assailant who had previously threatened her life. (¶ 20). When she attempted to grieve the disclosure, HR representative Joelle Graf ("Ms. Graf") blocked her from doing so. (¶ 21). As argued in Plaintiff's Response to Defendants' Motion to Sever, Ms. Graf is a common alleged bad actor across Ms. Horne's employment with the various UPMC entities. Ms. Horne named Ms. Graf in multiple EEOC charges and internal complaints, asserting that she was being retaliated against for protected activity and denied reinstatement from FMLA leave and internal advancement opportunities. (¶¶

22, 65, 90). Despite these complaints, Ms. Graf remained assigned to Ms. Horne. When Ms. Horne requested a neutral HR contact, she was told there was no conflict of interest. (¶ 89-90, 94). Ms. Graf played a central role in denying Ms. Horne access to grievance procedures, misrepresenting her reinstatement rights, and informing her that no positions were available when she sought continued employment. (¶¶ 104-105). Even after Plaintiff complained to Ms. Graf's superior, Caitlin Thomas, no investigation or reassignment was undertaken. (¶¶ 89-90).

Ms. Horne subsequently dual-filed a Charge of Discrimination with the EEOC and PHRC, alleging disability discrimination and failure to accommodate. (¶ 22). As described herein and in the Amended Complaint, Ms. Horne was thereafter subjected to a pattern of retaliation for filing her charge.

In the months following her charge, upon information and belief, Ms. Horne applied for over 130 internal positions. (¶ 23). Despite her qualifications and persistence, she was largely denied interviews and, upon information and belief, was blacklisted for engaging in protected activity by filing a charge of discrimination and requesting accommodation in the form of a transfer. (¶ 24).

**B. Transfer to UPMC Health Plan and Pregnancy Discrimination (2021)**

On July 20, 2021, Ms. Horne discovered she was pregnant. (¶ 25). On August 14, 2021, she began a new remote role with UPMC Health Plan as a Clinical Operations Representative. (¶ 26). Within days, she was hospitalized and diagnosed with Hyperemesis Gravidarum ("HG"), a severe pregnancy-related condition. (¶ 27). The condition substantially impacted major life activities such as eating, drinking, regular digestive function, and sleeping. (¶ 28). UPMC was aware of her condition and provided some medical accommodation. (¶ 29).

Between August 19 and September 16, 2021, Ms. Horne was hospitalized twice. (¶ 30). Despite knowing she could not drive, UPMC required her to come into the office on three occasions to address IT equipment issues. (¶¶ 31–32). Her supervisor, Karen Sinipoli ("Ms. Sinipoli"), falsely accused her of manipulating the equipment issues to get time off. (¶ 33).

On September 16, 2021, after Ms. Horne attended a virtual OB appointment, Ms. Sinipoli called her and berated her for "missing so much work." (¶ 35). Ms. Sinipoli demanded that Ms. Horne resign to "focus on [her] pregnancy," said she had "quotas to fill," and threatened termination if she refused to resign from her position. (¶ 36). When Ms. Horne declined to resign, Ms. Sinipoli threatened to "take the next steps" toward firing her (¶ 37), which triggered Ms. Horne to have another panic attack. (¶ 38).

Ms. Horne's OB-GYN, Carrie Weaver, advised her to report the incident and consider taking leave to protect her job. (¶¶ 39–40). Ms. Horne reported the incident to HR representative, Anna Scofield ("Ms. Scofield") and her team lead, Dorian LNU. (¶¶ 41–42). She was placed on short-term disability leave until the end of November 2021, with plans to return part-time. (¶ 43).

**C. Retaliation and Constructive Discharge from UPMC Health Plan (Late 2021–Early 2022)**

While on leave, Ms. Horne attempted to transfer out of Ms. Sinipoli's supervision. Ms. Sinipoli initially agreed but then refused to confirm her approval with other supervisors. (¶¶ 44–45). This obstructed Ms. Horne's ability to interview and constituted retaliation. (¶ 46). She applied to about 50 positions but was repeatedly denied, with the majority of denials occurring after disclosing her pregnancy. (¶¶ 47–48).

With WorkPartners' approval, Ms. Horne proposed three return-to-work accommodations. However, UPMC Health Plan denied all three without explanation (¶¶ 49–50) and did not propose

any alternative accommodations or otherwise engage in the interactive process. (¶ 52). Ms. Horne's disability specialist, Jason Berg ("Mr. Berg"), told her UPMC "did not want [her] to return" (¶ 51), which was confirmed when her position was posted online. (¶ 53).

UPMC Health Plan's refusal to reinstate her and blanket denial of all accommodations constituted retaliation for engaging in protected activity. (¶ 54). Ms. Horne remained on leave until January 28, 2022, when she began applying internally again. (¶ 55).

HR informed her that her employment would be terminated if she did not secure a new job by March 17, 2022. (¶ 56). They acknowledged there was nothing they could do if Health Plan refused to reinstate her. (¶ 57).

**D. Return to Corporate, Second EEOC Charge, and Continued Retaliation (2022–2023)**

On January 30, 2022, Ms. Horne was hired by UPMC Corporate Services as an Account Representative Senior. (¶ 58). She concealed her pregnancy during the interview due to prior discriminatory denials. (¶ 59). She gave birth on March 14, 2022, and went on maternity leave until April 22, 2022. (¶ 60). She was then diagnosed with postpartum HG and a flare of PMDD. She requested Accommodated Time Away (ATW) leave until June 16, 2022. (¶¶ 61–62). Defendants claimed they never received her paperwork and denied her leave without notifying her. (¶¶ 63–64).

On or around June 8, 2022, she filed *pro se* a second Charge of Discrimination with the EEOC and PHRC, naming UPMC Health Plan and alleging pregnancy and disability discrimination. (¶ 65). When she returned to work, her absences were still marked unexcused, despite HR retroactively awarding her two weeks of paid leave. (¶¶ 66–67). Defendants' refusal to correct her record was done in retaliation for her protected activity. (¶ 68).

Specifically, in her second Charge of Discrimination,[1] Ms. Horne alleged, "**I informed the Respondent of my disability and requested a reasonable accommodation.**" (ECF No. 34-2). Ms. Horne alleged that Health Plan "**would not enter into the interactive process with me.**" *Id*. Further, Ms. Horne alleged that "Ms. Sinopli called me on my personal cell phone and **told me that I had to resign or take a leave of absence.**" (*Id*.). Finally, Ms. Horne stated at the end of her *pro se* Charge, "I believe that I was discriminated against based on my pregnancy, in violation of [Title VII] when the Respondent would not enter the interactive process." *Id*.

**E. Pattern of Retaliation, Blocked Advancement, and Denied Accommodations (2022–2024)**

Throughout her time at UPMC Corporate, Ms. Horne requested a simple accommodation: that her supervisors notify her of meeting topics beforehand to reduce CPTSD-related anxiety. (¶ 69). Supervisors Brenda Fraas ("Ms. Fraas") and Ashley Hansen ("Ms. Hansen") ignored this request, exacerbating the symptoms of her anxiety disorder. (¶¶ 70–71).

In late 2022, Ms. Horne shadowed nursing assistant roles and accepted a PCT position at Magee. (¶¶ 73–74). Ms. Fraas and Ms. Hansen demanded she use 80 hours of PTO. When she asked to take unpaid leave instead, they denied the request and forced her to withdraw her acceptance. (¶¶ 75–77). Senior leadership later confirmed she should have been granted the leave.

---

[1] UPMC Health Plan seeks dismissal from Counts II through V of Ms. Horne's Amended Complaint, arguing that she failed to exhaust all her ADA claims and her Title VII retaliation claim in her second Charge of Discrimination. As discussed below, the Third Circuit's fact-specific "relevant test" to determine whether a claim needs to be exhausted is whether "the acts alleged in the subsequent … suit are fairly within the scope of (1) the prior EEOC complaint, or (2) the investigation arising therefrom." *Simko v. United States Steel Corp.*, 992 F.3d 198, 207 (3d Cir. 2021) (applying the Third Circuit relevance test and clarifying precedential authority at n.7). Ms. Horne's second Charge of Discrimination satisfies both inquiries.

(¶ 78). From January 2023 to March 2024, Ms. Horne applied to numerous internal roles and was repeatedly rejected despite being told she was a perfect fit. (¶¶ 92–93). Ms. Horne suspected Ms. Graf, who had been reassigned to her repeatedly despite conflicts of interest, was pausing or interfering with her applications in retaliation. (¶¶ 89–91, 94). She was also denied a Billing Specialist position after interviewers objected to background noise from her children—despite knowing it was her day off and that she offered to reschedule. (¶¶ 80–87). Male employees were not treated similarly. (¶ 88).

**F. Termination During FMLA Leave (2024)**

On January 6, 2024, Ms. Horne began a moonlighting role at UPMC Magee's ER while keeping her Corporate position. (¶ 95). She developed bronchitis and an ear infection and was granted FMLA leave from February 19 to April 19. (¶¶ 96–97). While on leave, she accepted a Nursing Assistant position at Magee on March 6 but withdrew her acceptance on March 12. (¶¶ 99–100). On March 19, she was told her position had been eliminated. (¶¶ 101–102). Because her moonlighting role was contingent on a full-time position, she lost that as well. (¶ 103).

Despite promises of help from HR, Ms. Horne was unable to log in to the employment portal as of April 6 and was told there were "no positions available" for her. (¶¶ 104–112). Her FMLA leave expired on April 19, 2024, and she was formally terminated by email on April 23, 2024. (¶ 113). Although UPMC recorded her as having resigned, her position was eliminated, and she was effectively terminated. (¶ 115). Defendants have continued retaliating against her by appealing her unemployment benefits. (¶ 117).

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "does not impose a probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When reviewing a Rule 12(b)(6) motion, the court must "accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009). Courts must also consider the complaint "as a whole," and may not "disregard factual allegations merely because they seem unlikely." *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam); *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007). A court may grant dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation omitted).

The pleading threshold "is not meant to impose a great burden on a plaintiff." *Sampson v. Sisters of Mercy of Nw. Pa.*, No. 1:17-CV-83, 2018 WL 460430, at *2 (W.D. Pa. Jan. 18, 2018). A complaint need only "raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Connelly*, 809 F.3d at 789 (cleaned up). At this stage, the Court may not weigh evidence or resolve factual disputes. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).

## III. LEGAL ARGUMENT

### A. PLAINTIFF HAS EXHAUSTED HER ADMINISTRATIVE REMEDIES AS TO COUNTS II, III, IV AND V AGAINST UPMC HEALTH PLAN.

Defendant UPMC Health Plan contends that Ms. Horne failed to exhaust administrative remedies with respect to her ADA claims and Title VII retaliation claim against UPMC Health Plan. This argument lacks merit. Under the Third Circuit "relevant test," a claim is administratively exhausted where it is either: (1) fairly within the scope of the EEOC charge, or (2) reasonably within the scope of the investigation arising from that charge. *Simko v. United States Steel Corp.*, 992 F.3d 198, 207 (3d Cir. 2021); *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984).[2] The two-pronged exhaustion analysis is "fact-specific," and courts must examine the EEOC charge and the unexhausted claim "on a case-by-case basis." *Simko*, 992 F.3d at 207 (citing *Robinson v. Dalton*, 107 F.3d 1018, 1024 (3d Cir. 1997)). The original charge is the "touchstone" of the exhaustion analysis. *Id*. at 210 (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)).

Here, Ms. Horne's claims against Health Plan are exhausted under both prongs.

Under the first prong, Ms. Horne's Counts II through V are fairly within the scope of her EEOC Charge. Notably, the Charge form did not include boxes for disability and retaliation and merely directed the pro se charging party to complete the "Discrimination Based On" section, wherein Ms. Horne wrote, "Sex." (ECF No. 34-2). Notwithstanding, a charging party's failure to check a specific box is not a fatal error. *See Wilson v. Columbia Gas of Pennsylvania*, 676 F.Supp.3d 424, 446 (W.D. Pa. 2023) (citation omitted). Still, in her Amended Charge filed August

---

[2] The same is true with respect to claims under the PHRA. *Wilson v. Columbia Gas of Pennsylvania*, 676 F.Supp.3d 424, 446 (W.D. Pa. 2023) (citing *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013).

6, 2024, Ms. Horne checked the boxes for sex, disability, retaliation and other (pregnancy). (See attached Exhibit A, Ms. Horne's Amended Charge No. 533-2022-01873).

Additionally, Ms. Horne, a lay person in matters of employment law, filed a pro se Charge. While Ms. Horne identified pregnancy discrimination under Title VII in her Charge, the factual predicate of her claim plainly includes the disclosure of her disability, the denial of her request for reasonable accommodation and Health Plan's refusal to engage in the interactive process—core components of ADA violations. Frankly, penalizing Ms. Horne for attempting to use statutory language and allege her Charge as a lawyer might would be manifestly unjust.

To that end, Defendant attempts to dispose of Ms. Horne's claims because she did not name the ADA. "The most important consideration in determining whether the plaintiff's judicial complaint is reasonably related to his EEOC charge is the factual statement." *Id*. (quoting *Doe v. Kohn Nast & Graf, P.C.*, 866 F. Supp. 190, 197 (E.D. Pa. 1999)). Here, the Charge particulars expressly alleged that she informed Health Plan of her "disability" (separate from her pregnancy) and "requested reasonable accommodation," describing her protected activity under the ADA with precise language. (ECF No. 34-2). She further alleged that Health Plan "would not enter into the interactive process with me," a clear reference to the employer's duty to engage in the interactive process under the ADA. *See id.*; *see also Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311–12 (3d Cir. 1999) (holding employers have an "affirmative duty" to engage in an interactive process once a request for accommodation is made). Despite Ms. Horne drafting her Charge pro se, she used intentional and precise statutory language to invoke the ADA. The fact that Ms. Horne did not identify the ADA by name is not fatal to her claims.[3]

---

[3] In *Wilson*, this Court found that a reasonable EEOC investigation should include claims not specifically mentioned in the EEOC charge "where there was a close nexus between the facts supporting the claims raised in the charge and those in the complaint." *Wilson*, 676 F.Supp.3d 424,

The same above principles apply to Ms. Horne's retaliation claims. While she does not use the word "retaliation," she alleges events which, read fairly and plainly, constitute claims of retaliation under the ADA and Title VII. The Charge alleged that she informed UPMC Health Plan of her disability and requested accommodation, that Health Plan refused to enter the interactive process, and that in retaliation she was pressured to resign or take leave immediately after disclosing her pregnancy and disability and accommodation request. (ECF No. 34-2). These allegations framed the core grievance of unlawful retaliation and discrimination for asserting her rights under the ADA and Title VII. Although Ms. Horne was formally terminated after the second charge was filed, her termination was a continuation of the same unlawful conduct described in that Charge—namely, Defendant's refusal to accommodate her and its efforts to force her out after she engaged in protected activity.

For the second prong, "[W]hen determining whether a claim fairly or reasonably falls within the investigation arising from a charge, courts consider (1) whether the claim arises from the same set of facts that support the original charge and (2) whether the claim advances the same theory of discrimination as the original charge." *Simko*, 992 F.3d at 209. This inquiry focuses not on whether the EEOC actually investigated the subsequent claim, but on whether a reasonable investigation into the original charge would have encompassed it. *Id.* at 209–10.

---

446 (W.D. Pa. 2023) (citing *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984)). "In such a case, the Court may reasonably expect an awareness on the part of the defendant that such allegations are likely." *Id*. (citing *Schouten v. CSX Transp., Inc.*, 58 F.Supp.2d 614, 616-17 (E.D. Pa. 1994). So too here, it can be reasonably expected that Defendants were aware that Ms. Horne would bring ADA claims in her lawsuit based on her express use of ADA language in her Charge allegations.

Here, Ms. Horne's ADA and Title VII retaliation claims arise from the very same factual nucleus described in her August 6, 2024 Amended Charge. In both the charge and the Complaint, Ms. Horne alleges that:

- She disclosed her disability and requested a reasonable accommodation;
- UPMC Health Plan refused to engage in the interactive process or accommodate her;
- She was told by her supervisor to either resign or take a leave of absence;
- She was ultimately terminated after disclosing her pregnancy, disability, and accommodation request.

These allegations form the backbone of Counts II (retaliation), IV (pregnancy discrimination), and V (failure to accommodate) in the Complaint. There is no disconnect between the facts supporting the administrative charge and those now forming the basis of the litigation. The same actors (e.g., Ms. Sinopoli and Health Plan HR), the same protected activity (disclosure of disability and pregnancy, request for accommodation), and the same adverse consequences (exclusion from work, forced leave, termination) are alleged throughout.

Additionally, Ms. Horne's legal theories in the Complaint track those raised in her administrative charge. Both the charge and Complaint allege:

- Discrimination on the basis of sex/pregnancy (Title VII);
- Failure to accommodate a disability (ADA);
- Retaliation for requesting accommodation for a pregnancy-related disability (ADA and Title VII).

As the Third Circuit held in *Waiters*, even where later retaliation claims involve new officials or post-charge actions, they are still exhausted so long as the "core grievance" remains the same. 729 F.2d at 238. The Court in *Simko* reaffirmed that post-charge allegations are not

barred where they are "reasonably within the scope of the EEOC investigation that would arise from the initial charge." *Simko*, 992 F.3d at 209–10. Here, the subsequent denial of reinstatement and termination merely reflects the continuation and culmination of the same unlawful conduct—namely, UPMC Health Plan's efforts to eliminate Ms. Horne's employment after she engaged in protected conduct.

Thus, even if Ms. Horne's termination occurred after the filing of the Amended Charge, it falls squarely within the scope of the EEOC's investigation and the theories of discrimination and retaliation asserted therein. To require Ms. Horne to file yet another charge to preserve claims stemming from an unbroken course of discriminatory and retaliatory conduct would elevate form over substance and directly conflict with binding Third Circuit precedent. *See Hicks*, 572 F.2d at 966 ("[T]he actual EEOC investigation does not necessarily set the outer limit of the civil complaint.").

Accordingly, Ms. Horne's ADA and Title VII retaliation claims against UPMC Health Plan are administratively exhausted under both prongs of the relevant test, and Defendant's motion to dismiss these claims on the basis of failure to exhaust should be denied.

The Third Circuit has made clear that courts should not elevate form over substance when evaluating exhaustion. The Court must construe EEOC charges liberally, particularly when drafted pro se. *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 965 (3d Cir. 1978); *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004) (pro se filings are "held to less stringent standards"). Ms. Horne's Charge, although drafted without counsel, clearly put the agency and Respondent on notice that she was asserting a failure to accommodate a disability. Her description of the denial of accommodation and pressure to resign—without any reference to performance or legitimate business reasons—further supports an inference of discriminatory motive.

Accordingly, Plaintiff has exhausted her administrative remedies as to her ADA claims and Title VII retaliation related to Health Plan. Defendant UPMC Health Plan's motion to dismiss Counts II through V for lack of exhaustion should be denied.

**B. MS. HORNE'S AMENDED COMPLAINT ALLEGES PLAUSIBLE CLAIMS FOR RELIEF UNDER TITLE VII, THE ADA, PHRA AND FMLA**

In the Third Circuit, claims for discrimination and retaliation under Title VII, the ADA and the PHRA are all evaluated under the same burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (ADA retaliation is analyzed under the same framework as Title VII); *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (Title VII and PHRA discrimination); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003) (ADA discrimination and retaliation). To survive a motion to dismiss, a plaintiff need only plead facts that plausibly suggest a claim for relief. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (holding that the prima facie case is an "evidentiary standard, not a pleading requirement"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nonetheless, Plaintiff's First Amended Complaint pleads sufficient facts to satisfy the *McDonnell Douglas* prima facie framework for discrimination and retaliation under the ADA, Title VII, PHRA and FMLA.

To establish a prima facie case of discrimination under Title VII, the ADA or the PHRA, a plaintiff must allege that: (1) she is a member of a protected class or has a disability; (2) she was qualified for her position; and (3) she suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008); *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000). For retaliation, a plaintiff must allege that: (1) she engaged in protected activity; (2) the employer took an adverse employment

action after or contemporaneous with the protected activity; and (3) there was a causal connection between the protected activity and the adverse action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006). These standards apply equally under the PHRA. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

Additionally, FMLA retaliation claims are also evaluated under the *McDonnell Douglas* burden-shifting framework. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012). To establish a claim of FMLA retaliation, a plaintiff must show that: (1) she invoked her right to FMLA-qualifying leave; (2) she suffered an adverse employment decision; and (3) the adverse action was causally related to her exercise of FMLA rights. *Id*. at 302. However, at the pleading stage, a plaintiff is not required to establish a prima facie case. *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014).

To survive a Rule 12(b)(6) motion, a complaint must allege sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not prove her case at the pleading stage — she must simply allege facts that, if true, would entitle her to relief. Ms. Horne's Amended Complaint meets this burden.

**i. Plaintiff Is a Member of Protected Classes and Engaged in Protected Activities Under Title VII, the ADA, the PHRA and FMLA.**

Plaintiff adequately alleges that she was (1) a qualified individual with a disability, including pregnancy-related disabilities, within the meaning of the ADA and PHRA, and (2) a member of a protected class under Title VII based on sex and pregnancy. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 147 (3d Cir. 2004); *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358,

364 (3d Cir. 2008) (pregnancy-related conditions are protected under Title VII as amended by the PDA); 42 U.S.C. § 2000e(k). While pregnancy itself is not a disability under the ADA, pregnant employees with one or more qualified, pregnancy-related disabilities are covered under the ADA. Ms. Horne has sufficiently alleged her substantial impairment to one or more major life activities due to multiple pregnancy-related and non-pregnancy-related disabilities. Therefore, she is protected under Title VII, the ADA and PHRA.

Additionally, Ms. Horne has adequately alleged that she engaged in various protected activities under Title VII, the ADA, PHRA and FMLA. Ms. Horne engaged in extensive protected activity throughout her employment, including repeatedly requesting reasonable accommodation for her disabilities and pregnancy-related medical conditions that were denied without explanation, requesting and taking FMLA leave, and filing multiple internal complaints and formal EEOC charges alleging discrimination, retaliation, and failure to accommodate under Title VII, the ADA, and the PHRA. She also reported ongoing concerns of retaliation to HR representatives, including Ms. Graf and her supervisors, all of which were ignored or dismissed. Therefore, Ms. Horne has plausibly alleged that she engaged in protected activity under Title VII, the ADA, the PHRA and FMLA.

**ii. Plaintiff Was Qualified for Her Positions and Performed Satisfactorily.**

Plaintiff worked across multiple UPMC entities in various roles and consistently performed her duties. She was never formally disciplined or cited for performance issues prior to asserting her protected rights. She was on active status and eligible for reinstatement when her position was eliminated during her protected leave.

**iii. Plaintiff Suffered Adverse Employment Actions.**

Plaintiff has plausibly alleged that she suffered multiple adverse employment actions sufficient to support her claims of discrimination and retaliation under Title VII, the ADA, the PHRA and the FMLA. The Amended Complaint alleges:

(1) denial of multiple transfer and promotional opportunities despite Ms. Horne's qualifications and interest, allegedly orchestrated by HR personnel involved in prior charges;

(2) UPMC Corporate's and Magee's refusal to assign her a different HR representative after she raised concerns about retaliation and bias;

(3) Health Plan's directive that she either resign or take an immediate leave of absence after disclosing her pregnancy and requesting accommodation;

(4) UPMC Magee's and Corporate's failure to reinstate Ms. Horne to her prior position or a substantially equivalent role following FMLA leave, in violation of 29 U.S.C. § 2614; and

(5) her ultimate termination from UPMC Magee and Corporate Services while she was on FMLA-protected leave.

Critically, Plaintiff alleges that Defendants terminated her position on or around April 23, 2024, after the expiration of her FMLA leave, and informed her there were no positions available, despite her statutory right to reinstatement under the FMLA. Courts have long recognized that denial of reinstatement and termination following protected leave may constitute actionable interference and retaliation under the FMLA. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) (denial of reinstatement after protected leave can form the basis of FMLA retaliation and interference claims); *see also,* 29 U.S.C. §§ 2614(a)(1), 2615(a)(1); 29 C.F.R. § 825.214.

Defendants' adverse actions coupled with Plaintiff's forced removal while on protected leave and denial of reinstatement support a strong inference of retaliatory and discriminatory

motive. Such conduct meets the legal standard for materially adverse employment consequences under both Title VII and the ADA. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Conoshenti*, 364 F.3d at 146.

### iv. Discriminatory Inference Arises from Defendants' Conduct and Retaliatory Pattern.

A reasonable inference of discrimination arises from the timing and sequence of events, the continued involvement of the same HR actors, particularly Joelle Graf, and Defendants' repeated denial of reinstatement, transfer or accommodation after Plaintiff engaged in protected activity. Ms. Horne's allegations include:

(1) Repeated denial of requests for accommodation after disclosing her disabilities and pregnancy without explanation or engagement in the interactive process;

(2) Sudden removal from her schedule and position after those disclosures;

(3) Disparate treatment compared to similarly situated employees who were retained, accommodated, or reinstated when Ms. Horne's position was eliminated without "backfilling";

(4) Repeated assignment of Ms. Graf as her HR contact despite Plaintiff's complaints of bias and retaliation to Ms. Graf and her superiors, which were dismissed without investigation; and

(5) Refusal to consider her for other open positions despite her qualifications.

These allegations, taken as true, plausibly support an inference that Plaintiff's disability, pregnancy, requests for accommodation and internal and external complaints of discrimination and retaliation, including the filing of multiple EEOC charges, were motivating factors in Defendants' decisions, sufficient to state a claim of discriminatory animus. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008); *C.A.R.S.*, 527 F.3d at 366.

**v. Plaintiff Has Alleged a Plausible Claim of FMLA Interference.**

The FMLA provides that it "shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" that it guarantees. 29 U.S.C. § 2615(a)(1). Unlike retaliation claims, FMLA interference claims do not require proof of discriminatory intent or the application of the *McDonnell Douglas* burden-shifting framework. *Sommer v. Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006); *Ross v. Gilhuly*, 755 F.3d 185, 192 (3d Cir. 2014). In other words, FMLA interference violations are subject to strict liability. *Id*.

To establish a claim for interference under the Family and Medical Leave Act (FMLA), a plaintiff must show: (1) they were an eligible employee; (2) the defendant was an employer subject to the FMLA; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice of their intention to take leave; and (5) the plaintiff was denied a benefit to which they were entitled. *Capps v. Mondelez Global LLC*, 847 F.3d 144, 155 (3d Cir. 2017); *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014). One of the rights that it guarantees is "to be restored by the employer to the position of employment held by the employee [or an equivalent position] when the leave commenced" upon return from FMLA leave. *Budhun v. Reading Hosp. and Medical Center*, 764 F.3d 245, 252 (3d Cir. 2014) (citing 29 U.S.C. § 2614(a)(1)).

Here, Ms. Horne has alleged that she was an eligible employee, that Defendants were covered employers and that she qualified for FMLA leave based on her serious health condition. She further alleges that she timely informed UPMC of her need for leave, and that she was ultimately denied reinstatement to her position or a comparable position when her leave concluded, despite her entitlement under the FMLA.

The FMLA entitles an employee returning from leave to be reinstated "to the position of employment held by the employee when the leave commenced" or an equivalent position. 29 U.S.C. § 2614(a)(1); *Budhun v. Reading Hosp. & Med. Ctr.*, 764 F.3d 245, 252 (3d Cir. 2014). Denying that reinstatement, especially based on pretextual justifications like the position not being "backfilled," and when other employees in her position were allegedly retained, constitutes unlawful interference. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) (finding interference where employee was terminated before returning from FMLA leave).

Accordingly, Plaintiff has plausibly alleged that Defendants interfered with her rights under the FMLA by failing to reinstate her to her position or a substantially similar role. These allegations are sufficient to survive a Rule 12(b)(6) motion.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motions to Dismiss in their entirety. The Amended Complaint sets forth plausible claims for discrimination, failure to accommodate, retaliation, and interference under the ADA, Title VII, the PHRA, and the FMLA. Plaintiff has sufficiently alleged that she engaged in protected activity, suffered multiple adverse employment actions, including denial of reinstatement and retaliatory termination, and that these actions were causally connected to her exercise of statutory rights. Defendants' arguments for dismissal elevate form over substance, ignore the factual allegations in the Amended Complaint, and disregard well-established pleading standards under Rule 8 and Rule 12(b)(6). Accordingly, the case should proceed to discovery on all claims.

Dated: May 28, 2025

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

_*/s/ Justin M. Bahorich*_____
Justin M. Bahorich, Esq.
Pa. I.D. No. 329207
J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206
Tel: (412) 310-2737
Email: jbahorich@jpward.com

*Counsel for Plaintiff*