IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

CHEYANNE HORNE,                         )
                                        )
            Plaintiff,                  )          2:24-CV-01497-MJH
                                        )
    vs.                                 )
                                        )
UPMC d/b/a UPMC CORPORATE               )
SERVICES,  UPMC HEALTH PLAN, INC.,      )
UPMC MAGEE-WOMEN'S HOSPITAL,

            Defendants,

OPINION

Plaintiff, Cheyanne Horne, brings the within action for employment discrimination and

retaliation against Defendants, UPMC Health Plan, Inc. ("Health Plan"), UPMC d/b/a UPMC

Corporate Services ("UPMC"), and UPMC Magee-Women's Hospital ("Magee"). (ECF No. 23).

Against the Health Plan, Ms. Horne asserts claims for Gender Discrimination under the

Pregnancy Discrimination Act (PDA) (Count I), Discrimination under the Americans with

Disabilities Act (ADA) and Pennsylvania Human Relations Act (PHRA) (Count III), and

Retaliation under the ADA and PHRA (Count IV). Against all Defendants, she asserts

Retaliation under the PDA (Count II).  Against the Health Plan and UPMC, she asserts a claim

for Failure to Accommodate under the ADA and the PHRA (Count V).  Against UPMC, she

asserts a claim for Sex and Caregiver Discrimination under Title VII and the PHRA (Count VI).

Finally, against Magee and UPMC, she asserts a claim for Family Medical Leave Act (FMLA)

Retaliation and Interference (Count VII).

Magee moves to dismiss Counts II and VII.  (ECF No. 27).  The Health Plan moves to

dismiss Counts II, III, IV, and V.  (ECF 28).  UPMC moves to dismiss Counts II, V, VI, and VII.

(ECF No. 29).  These motions are now ripe for decision.

Upon consideration of Ms. Horne's Amended Complaint (ECF No. 23), Magee's Motion to Dismiss (ECF No. 26), the respective briefs (ECF Nos. 27, 43, and 44), and for the following reasons, Magee's Motion to Dismiss will be granted.

Upon consideration of Ms. Horne's Amended Complaint (ECF No. 23), Health Plan's Partial Motion to Dismiss (ECF No. 28), the respective briefs (ECF Nos. 33, 43, and 46), and for the following reasons, Health Plan's Partial Motion to Dismiss will be granted.

Upon consideration of Ms. Horne's Amended Complaint (ECF No. 23), UPMC's Motion to Dismiss (ECF No. 29), the respective briefs (ECF Nos. 30, 43, and 45), and for the following reasons, UPMC's Motion to Dismiss will be granted.

## I.    Introductory Background

Ms. Horne has alleged seven claims against the three former employers.   Her employment timeline with these defendants is alleged as follows:

- On February 4, 2019, Ms. Horne began working for UPMC.[1] (ECF No. 23 at ¶ 6).

- On August 14, 2021, Ms. Horne left UPMC and began a new remote position with the Health Plan as a Clinical Operations Representative. *Id*. at ¶ 26.

- On January 30, 2022, Ms. Horne left the Health Plan and returned to UPMC as an Account Representative Senior ("ARS") with UPMC. *Id*. at ¶ 58.

- On January 6, 2024, Ms. Horne began a moonlighting position as a Health Unit Coordinator with Magee in the Emergency Room while she maintained her position with UPMC. *Id*. at ¶ 95. Ms. Horne's moonlighting position was contingent on her full-time position with UPMC.  *Id*. at ¶ 103.

---

[1] Ms. Horne's Amended Complaint does not identify a position title with UPMC during this time period.

- On March 19, 2024, Ashley Hanson notified Ms. Horne that the ARS position with UPMC was being eliminated. *Id*. at ¶ 101.

- On April 23, 2024, Ms. Horne's employment with UPMC and her moonlighting position with Magee ended. *Id*. at ¶ 113.

## II.    Relevant Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief [*5]  above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a prima facie case at this stage; the party must

only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs. Ltd.*, 2008 U.S. Dist. LEXIS 44192, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail; but rather, whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).

### III.    Health Plan's Motion to Dismiss

#### A.    Relevant Background

Ms. Horne alleges that, on August 14, 2021, the Health Plan hired her for a remote job as a Clinical Operations Representative. She was pregnant at the time she was hired. (ECF No. 23 at ¶¶ 25- 26). Ms. Horne alleges that, on August 19, 2021, she was admitted to the hospital and diagnosed with a condition related to pregnancy, Hyperemesis Gravidarum ("HG"). *Id*. at ¶ 27. The Health Plan allegedly provided Ms. Horne with medical accommodations for her pregnancy-related condition. *Id*. at ¶ 29.  On September 21, 2021, Ms. Horne's supervisor allegedly "berated her for missing so much work" and asked her to resign "to focus on her pregnancy" and threatened her with termination if she did not.  *Id*. at ¶¶ 35-36.  Thereafter, Ms. Horne lodged a

complaint about her supervisor to Human Resources. *Id*. at. ¶ 41. Due to her HG condition, Ms. Horne requested short term disability leave. *Id*. at ¶¶ 129, 165. Ms. Horne alleges that she was not permitted to return to work, because the Health Plan would not accommodate her HG, and she remained on leave until January 28, 2022, at which time she began to look for a new position. *Id*. at ¶ 55. Ms. Horne was hired by UPMC, and on January 30, 2022, she began her Account Representative job with UPMC. *Id*. at ¶ 58.

On June 8, 2022, Ms. Horne filed a charge of discrimination against Health Plan with the Equal Employment Opportunity Commission ("EEOC") and with the Pennsylvania Human Relations Commission ("PHRC"). *Id*. at ¶ 65. In the 2002 EEOC and PHRC charge, Ms. Horne completed the box, "discrimination based on," by inserting the word "sex." She specifically pleads:

> 1. I began my employment with the Respondent [Health Plan] on February 4, 2019. I currently work as an Account Representative Sr. for Corporate Services. My previous Supervisor was Karen Sinopoli, Supervisor of Call Center Clinical Operations. My current supervisor is Ashley Hansen. Supervisor for Billing. On or about August 12, 2021, I started working for UPMC Health Plan Clinical Operations and was transferred January 28. 2022. After I applied and interview for this transferred to her current position. [sic]
>
> 2. I informed the Respondent [Health Plan] of my disability and requested a reasonable accommodation. The Respondent [Health Plan] would not enter into the interactive process with me. On or about September Ms. Sinopoi called me on my personal cell phone and told me that I had to resign or take a leave of absence.
>
> 3. I believe that I was discriminated against based on my pregnancy, in violation of Title VII of the Civil Rights Act when the Respondent [Health Plan] would not enter the interactive process.

(ECF No. 34-2).

       B. <u>Analysis</u>

           1. *PDA Retaliation (Count II) and Retaliation under the ADA and PHRA (Count IV)*

The Health Plan argues that Counts II and IV, which allege retaliation, are beyond the scope of Ms. Horne's 2022 EEOC and PHRC charge.  Specifically, the Health Plan contends that the 2022 charge did not allege retaliation under either Title VII or the ADA.

Ms. Horne maintains, that while she does not use the word "retaliation," she alleges events which, read fairly and plainly, constitute claims of retaliation under the ADA and Title VII.  Ms. Horne asserts that, the 2022 Charge alleges that she informed Health Plan of her disability and requested accommodation, that Health Plan refused to enter the interactive process, and that in retaliation she was pressured to resign or take leave immediately after disclosing her pregnancy and disability and accommodation request.  The Health Plan counters that "retaliation" appears nowhere, either expressly or implicitly.

Under the Third Circuit "relevant test," a claim is administratively exhausted where it is either: (1) fairly within the scope of the EEOC charge, or (2) reasonably within the scope of the investigation arising from that charge. *Simko v. United States Steel Corp.*, 992 F.3d 198, 207 (3d Cir. 2021); *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). The two-pronged exhaustion analysis is "fact-specific," and courts must examine the EEOC charge and the unexhausted claim "on a case-by-case basis." *Simko*, 992 F.3d at 207 (citing *Robinson v. Dalton*, 107 F.3d 1018, 1024 (3d Cir. 1997)). The original charge is the "touchstone" of the exhaustion analysis. *Id*. at 210 (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)).

Where a charge does not allege retaliation, a retaliation claim cannot be included in a subsequent lawsuit. *Brandon v. UPMC Presbyterian Shadyside*, 2023 WL 3093415 at *3 (W.D. Pa. April 26, 2023) (Horan, J.); *Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 788 (W.D. Pa. 2000); *Waiters v. Parsons*, 729 F. 2d 233, 237 (3d Cir. 1984).

Here, a fair reading of Ms. Horne's 2022 EEOC and PHRC charge does not support that it encompassed retaliation under either Title VII or the ADA.  Ms. Horne's 2022 EEOC and PHRC charge referenced sex discrimination, pregnancy, and Title VII.  The charge does not mention retaliation or aver facts that would support retaliatory conduct.   Furthermore, Ms. Horne has not otherwise alleged that the EEOC investigated retaliation in response to Ms. Horne's charge, such that the Health Plan would have been placed on notice of any retaliation claims.

Accordingly, the Health Plan's Motion to Dismiss claims against it in Counts II and IV will be granted.

2.  *Discrimination under the ADA and PHRA (Counts III and V).*

The Health Plan next argues that Counts III and V, which allege disability discrimination and failure to accommodate in violation of the ADA and PHRA, are beyond the scope of Ms. Horne's EEOC and PHRC charge.  Specifically, the Health Plan contends that the 2022 charge does not reference the ADA and does not allege that Ms. Horne had a disability unrelated to pregnancy.

Ms. Horne contends that the 2022 EEOC and PHRC charge alleged that she informed the Health Plan of her disability and requested accommodation, and the Health Plan refused to enter the interactive process.

The Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e-5 (k), covers discrimination based upon pregnancy-related medical conditions. The PDA specifically provides that employers may not discriminate in the way they treat pregnancy-related inability to work. It does so through its second clause, which states that "women affected by pregnancy ... shall be treated the same for all employment-related purposes ... as other persons not so affected but

similar in their ability or inability to work." *Id.*; *see also Young v. United Parcel Serv., Inc.*, 575

U.S. 206, 226–28, 135 S.Ct. 1338, 191 L.Ed.2d 279 (2015)

      Here, Ms. Horne's Amended Complaint belies the alleged intended scope of her 2022

EEOC and PHRC charge. In her Amended Complaint, she alleges the "disability" to which the

June 2022 charge refers, is "HG," a pregnancy related condition.  (ECF No.  23 at ¶¶ 126, 139).

The Amended Complaint further avers that:

> 144. The adverse employment action was directly connected with Ms. Horne's
> pregnancy due to Defendants being fully aware of her condition. Defendant
> UPMC Health Plan decided to terminate Ms. Horne instead of accommodating
> her and the symptoms of her pregnancy.
>
> 145. On June 8, 2022, Ms. Horne dual filed a Charge of Discrimination with the
> EEOC  and PHRC, alleging Defendants discriminated against her due to her
> pregnancy and pregnancy-related disability.

*Id*. at ¶¶ 144-145; *See also* AC ¶¶ 130-31 ("[Defendant's] adverse employment action against

Ms. Horne was directly connected with her pregnancy.").  While the 2022 EEOC and PHRC

charge uses terms such as "reasonable accommodation" and "interactive process," Ms. Horne's

charge is using these terms in relation to her condition of pregnancy and her pregnancy-related

affliction, HG.  Nowhere in the 2022 EEOC and PHRC charge is the ADA or PHRA referenced,

whereas Ms. Horne specifically mentions Title VII.   Thus, even with a generous reading of her

2022 charge, the scope of said charge does not encompass claims for disability discrimination in

violation of the ADA or PHRA.

      Accordingly, the Health Plan's Motion to Dismiss claims against it in Counts III and V

will be granted.

    **IV.    UPMC's Motion to Dismiss**

        A.   Relevant Background

Ms. Horne alleges that, on January 20, 2022, she accepted a position with UPMC as an Account Representative Senior.  (ECF No. 23 at ¶ 58). Ms. Horne alleges she gave birth to a child on March 14, 2022 and was later diagnosed with "post-partum HG," such that she was on maternity leave until April 22, 2022, and then she took a medical leave until June 16, 2022.  In addition, Ms. Horne alleges that UPMC knew that she had a diagnosis of Chronic Post-Traumatic Stress Disorder (CPTSD), and that she requested that her supervisors inform her of the subject matter of meetings in advance of meetings that she was asked to attend. *Id*. at ¶¶ 69, 179-80.  Further, Ms. Horne next avers that she requested and was approved for FMLA leave for the period of February 19, 2024 to April 19, 2024 due to bronchitis and an ear infection. *Id*. at ¶¶ 96-97, 205.  Ms. Horne alleges that UPMC eliminated the Account Representative Senior position while she was still on this FMLA leave, and that, because her position had been eliminated during her absence,  she was terminated on April 23, 2024 upon expiration of her FMLA leave. *Id*. at ¶ 113.

   B.  Analysis

   1.  *Retaliation under the PDA (Count II)*

UPMC identifies two alleged adverse actions against Ms. Horne in Count II:  "interfering with transfer requests" and the elimination of the Account Representative Senior position during her FMLA leave and her eventual termination in April 2024.

As regards the interference claim, UPMC asserts two reasons for dismissal.  First, UPMC argues that the Amended Complaint does not allege that a timely charge of interference was ever filed with the EEOC and PHRC.  Second, UPMC contends that the Amended Complaint avers insufficient allegations to support a plausible interference claim.   As regards her retaliation claim, related to her April 23, 2024 employment termination, UPMC maintains that the

Amended Complaint does not allege a basic element for a retaliation claim, namely that a decisionmaker knew about any protected activity.  Ms. Horne does not address these arguments in her responses.

Before a claimant may file a Title VII civil action in federal court, he or she must exhaust all administrative remedies with the Equal Employment Commission (the "EEOC"). 42 U.S.C. § 2000e-5(f)(1).  Exhaustion of administrative remedies is a threshold issue for discrimination claims. *Antol v. Perry*, 82 F.3d 1291, 1295 n.3 (3d Cir. 1996). "A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the EEOC for conciliation or resolution." *Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997).

Here, as a fundamental requisite to Ms. Horne's Count II claim for PDA retaliation, the Amended Complaint does not allege that a timely charge of discrimination was filed with the EEOC or PHRC with regard to either the 2021/2022 denials of transfer requests or her 2024 job termination.   In the her only operative EEOC and PHRC charge, filed by Ms. Horne in 2022, and as averred in the Amended Complaint, Ms. Horne does not reference retaliation or denials of transfer requests within her claims. Further, the 2022 charge pre-dated the 2024 job termination issue; thus, the 2022 charge clearly did not address this claim.  Therefore, under the allegations of the Amended Complaint, and in consideration of the 2022 EEOC and PHRC charge, Ms. Horne has not adequately pleaded that she has exhausted her administrative remedies as to claims against UPMC in Count II of the Amended Complaint.

Accordingly, UPMC's Motion to Dismiss the claims against it in Count II will be granted.

2.  *ADA and PHRA Failure to Accommodate (Count V)*

Ms. Horne alleges that UPMC knew that she had a diagnosis of CPTSD and that her supervisors failed to accommodate her request for them to inform her of the subject matter of meetings in advance of any meeting with her.  (ECF No. 23 at ¶¶ 69-71, 179-82). UPMC argues that the Amended Complaint does not allege the time for when this occurred or that Ms. Horne filed a timely charge with the EEOC or the PHRC encompassing this claim. Again, Ms. Horne does not address these arguments in her responses.

Here, under the authorities cited above with regard to administrative exhaustion, the Amended Complaint does not establish that Ms. Horne filed an EEOC or PHRC charge against UPMC with regard to her claim of failure to accommodate.  The 2022 EEOC and PHRC filing make no reference to CPTSD. This 2022 filing does not name UPMC as respondent, and, as noted above, the 2022 charge primarily referenced Title VII discrimination. Therefore, under the allegations of the Amended Complaint, and in consideration of the 2022 EEOC and PHRC charge, Ms. Horne has not adequately pleaded that she exhausted her administrative remedies in Count V of the Amended Complaint.

Accordingly, UPMC's Motion to Dismiss claims against it in Count V will be granted.

3.  *Sex and Caregiver Discrimination under Title VII and PHRA (Count VI)*

UPMC next argues that the Amended Complaint does not allege that Ms. Horne filed a timely charge with the EEOC or the PHRC that encompassed the allegations and claims of sex and caregiver discrimination under Title VII and PHRA against UPMC in Count VI. Again, Ms. Horne does not address these arguments in her responses.

Here, under the authorities cited above for administrative exhaustion, the Amended Complaint does not establish that Ms. Horne met the statutory requirements by having filed an EEOC or PHRC charge against UPMC with regard to sex and caregiver discrimination.  The

2022 EEOC and PHRC charge makes no reference to the factual allegations referenced within

Count VI as against UPMC. The 2022 EEOC and PHRC filing makes no reference to caregiver

discrimination. This 2022 filing does not name UPMC as respondent, and it primarily references

Title VII discrimination.  Therefore, under the allegations of the Amended Complaint and in

consideration of the 2022 EEOC and PHRC charge, Ms. Horne has not adequately pleaded that

she has exhausted her administrative remedies as regards UPMC in Count VI of the Amended

Complaint.

Accordingly, UPMC's Motion to Dismiss against it in Count VI will be granted.

### 4.  *FMLA Retaliation and Interference (Count VII)*

#### a.  FMLA Retaliation

The Amended Complaint alleges that Ms. Horne requested and was approved for FMLA

leave for the period of February 19, 2024 to April 19, 2024 due to bronchitis and an ear

infection. (ECF No. ¶¶ 96-97, 205). It also alleges that UPMC eliminated the Account

Representative Senior position while she was still on FMLA leave. *Id*. at ¶ 206.

UPMC argues that it is not unlawful to terminate an employee's employment while the

employee is on an approved FMLA leave, so long as it was not because the employee took the

leave.  UPMC further maintains that the Amended Complaint alleges a legitimate reason for Ms.

Horne's termination, i.e. the Account Representative Senior position was eliminated during the

period of her leave.

In her opposition brief, Ms. Horne does not argue in of support of her retaliation claim.

Instead, her entire argument is that the FMLA entitles her to reinstatement at the conclusion of

her leave.

To bring an FMLA retaliation claim, a plaintiff must allege: (1) she invoked the right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012). Under Department of Labor regulations, an employee, "has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. § 825.216(a).

Here, the Amended Complaint admits that Ms. Horne's UPMC job was eliminated. Ms. Horne has not alleged that said job elimination was related in any way to her invocation of FMLA or that Ms. Horne's job would not have been eliminated had she not taken FMLA leave. Without such allegations, Ms. Horne fails to plead facts to support the causation element for her claim. Thus, Ms. Horne cannot sustain an FMLA retaliation claim.

b. *FMLA Interference*

UPMC argues that Amended Complaint admits that notwithstanding the elimination of the Account Representative Senior position during her FMLA leave, Ms. Horne was not terminated until after she completed her FMLA leave. Therefore, UPMC contends that Ms. Horne cannot allege that she was denied the right to take FMLA leave. Ms. Horne argues that FMLA entitles her to reinstatement at the conclusion of her leave.

In order to prove a claim for FMLA interference, a plaintiff must establish: "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied

benefits to which he or she was entitled under the FMLA." *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014).

Here, UPMC's arguments are well taken. The Amended Complaint does not allege that Ms. Horne was denied benefits under the FMLA. The adverse employment action at issue occurred on April 23, 2024, i.e. when Ms. Horne was terminated because her position had been eliminated on March 19, 2024. Ms. Horne's FMLA expired on April 19, 2024, and her termination occurred after her FMLA leave expired. Therefore, there was no denial of FMLA benefits that would support a claim of FMLA interference.

Accordingly, UPMC's Motion to Dismiss against it in Count VII will be granted.

**V.    Magee's Motion to Dismiss**

A. <u>Relevant Background</u>

Ms. Horne alleges that she was hired on January 6, 2024 into a "moonlighting" job for Magee as a Health Unit Coordinator in the Emergency Room, while also continuing to work for UPMC. (ECF No. 23 at ¶ 95). Ms. Horne requested and was granted FMLA leave from her UPMC position for the period of February 19, 2024 through April 19, 2024. On February 20, 2024, while on FMLA leave from UPMC, Ms. Horne interviewed with Magee for a Nursing Assistant job. UPMC Magee offered Ms. Horne the job on March 6, 2024, and she accepted the offer. *Id*. at ¶¶ 98-100. However, on March 12, 2024 Ms. Horne retracted her acceptance, "due to personal reasons." *Id*. On March 19, 2024, while Ms. Horne was on FMLA leave from UPMC, UPMC informed her that the UPMC position of Account Representative Senior had been eliminated. *Id*. at ¶¶ 101-02. Ms. Horne alleges that "because [her] moonlighting position was contingent on her full-time position with [UPMC], the elimination of her position meant she would also lose her moonlighting position." *Id*. at ¶ 103.

In addition to references to events in 2024, Ms. Horne tangentially alleges that Magee terminated her because she reported pregnancy discrimination by the Health Plan in 2021-2022. Based on said alleged facts, Ms. Horne also asserts a claim for interference and retaliation in violation of the FMLA. *Id*. at ¶¶ 198-210. Ms. Horne concludes: "Defendants UPMC Magee and UPMC Corporate interfered and retaliated against Ms. Horne for exercising her rights under the FMLA by terminating her employment in the midst of her FMLA leave. *Id*. at ¶ 206.

B. <u>Analysis</u>

1. *Count II-PDA Retaliation*

Magee contends that Count II does not state a claim upon which relief can be granted, because the Court cannot infer from the Amended Complaint that Ms. Horne's April 2024 Magee job termination resulted from either her 2022 pregnancy discrimination complaint against a Health Plan supervisor, or from her June 2022 EEOC and PHRC filing against the Health Plan. Magee maintains that the Amended Complaint does not allege that Magee knew about Ms. Horne's 2021-2022 pregnancy complaints; and thus, there can be no causal connection between any 2024 adverse employment action and her alleged 2022 protected activities. Without addressing these specific arguments, Ms. Horne argues that she engaged in extensive protected activity throughout her employment.

 "Courts analyze PDA claims as sex discrimination under Title VII." *Brown v. Aria Health*, Civ. A. No. 17-1827, 2019 WL 1745653, at *5 (E.D. Pa. Apr. 17, 2019) (citation omitted). Title VII's anti-retaliation provision provides that "an employer may not 'discriminate against' an employee 'because,' among other things, the employee 'has opposed any ... unlawful employment practice.'" *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 279 (3d Cir. 2024) (quoting 42 U.S.C. § 2000e-3(a)). "To make out a prima facie case of retaliation, therefore, a

plaintiff must show that (1) 'she engaged in a protected activity,' (2) 'she suffered an adverse

employment action,' and (3) 'there was a causal connection between the participation in the

protected activity and the adverse action.'" *Id*. (quoting *Carvalho-Grevious v. Del. State Univ.*,

851 F.3d 249, 257 (3d Cir. 2017)).  A causal link may be established either by:

(1) temporal proximity; or (2) other circumstantial evidence in the record as a whole—such as a

pattern of antagonism or inconsistent explanations—that permits an inference of

causation. *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 280–81 (3d Cir.2000). Though

"there is no bright line rule as to what constitutes unduly suggestive temporal proximity,"  courts

have held that a causal link cannot be inferred by long temporal gaps. *See LeBoon v. Lancaster*

*Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (rejecting three-month gap);

*Malobabich v. Norfolk S. Ry. Co.*, 2:12-CV-1483, 2013 WL 1182237, at *3 (W.D. Pa. Mar. 21,

2013) (rejecting two years); *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 198 (3d Cir. 2015)

(rejecting ten-month gap); *Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007) (rejecting five-

month gap).

      Here, the Amended Complaint does not plausibly allege a causal link between the alleged

2021-2022 protected activity and the alleged 2024 adverse employment action.  First, any causal

link that could be established by temporal proximity facially fails.  In the Amended Complaint,

Ms. Horne alleges that, in 2021, she reported a Health Plan's supervisor's remark about her

pregnancy to the Health Plan's HR Department, and that in June 2022, she filed a charge against

Health Plan with the EEOC and PHRC.  Said events occurred in distant temporal proximity to

her alleged termination in April 2024.   In the Amended Complaint, Ms. Horne does not allege

that Magee knew of the above alleged 2021/2022 protected activity from when she was

employed with the Health Plan.  Without such nexus, the Amended Complaint does not plausibly

infer that Ms. Horne's April 2024 termination by Magee was in retaliation for a 2021 complaint about her Health Plan supervisor, or in retaliation for her June 2022 EEOC and PHRC Charge of pregnancy discrimination against the Health Plan. Moreover, a retaliation claim against Magee strains logic where, in 2024, two years after the alleged protected activities, Magee offered Ms. Horne a Nursing Assistant position, which she accepted and then later retracted. And, as regards the termination of her moonlighting position at Magee, the Amended Complaint concedes that said action was tied to the termination of her UPMC employment due to the unrelated elimination of the Account Representative Senior position by UPMC. Therefore, the Amended Complaint does not state a claim against Magee for PDA retaliation.

Accordingly, Magee's Motion to Dismiss claims against it in Count II will be granted.

### 2. *Count VII- FMLA Retaliation and Interference*

Magee argues that Ms. Horne does not allege any facts that would support a causal connection between her FMLA leave with UPMC and any retaliatory action by Magee. Further, Ms. Horne does not allege that Magee had any role in her job elimination with UPMC, which was the operative trigger for the elimination of her moonlighting job with Magee. More fundamentally, Magee maintains that the facts, as alleged in the Amended Complaint, do not establish that Ms. Horne was eligible for FMLA by virtue of her employment with Magee because, she had not been employed by Magee in the moonlighting position for the requisite period of time to meet statutory FMLA eligibility. Ms. Horne does not directly address Magee's arguments in her response.

Only an "eligible employee" is entitled to take FMLA leave. 29 U.S.C. § 2612 (a)(1). An "'eligible employee' means an employee who has been employed--(i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for

at least 1,250 hours of service with such employer during the previous 12-month period. 29 U.S.C. § 2611 (2)(A).

Here, Ms. Horne's Amended Complaint does not plead facts to establish that she was an eligible employee for FMLA leave as a Magee employee.  Ms. Horne's Amended Complaint avers that she began her job with Magee on January 6, 2024 and that she was terminated by Magee in April 2024.  Such interval of Magee employment does not meet the statutory requirements for FMLA eligibility.  Further, as discussed above, Ms. Horne's causal connection, with regard to any FMLA claim against Magee, is implausible, where she was offered a Nursing Assistant Job by Magee while she was on FMLA leave a to her employment with UPMC. Finally, as discussed above, Ms. Horne's moonlighting position was only terminated because of the neutral reason that, when she was no longer employed with UPMC, she was no longer eligible to maintain her moonlighting position. Thus, because Ms. Horne was not statutorily eligible to invoke any FMLA benefit with Magee, and because the Amended Complaint does not allege a plausible nexus between any FMLA leave and any adverse employment action by Magee, she cannot support any FMLA interference or retaliation claim.

Accordingly, Magee's Motion to Dismiss claims against it in Count VII will be granted.

**VI.    Conclusion and Amendment**

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be

granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great Western Mining & Mineral Co.*, 615 F.3d at 175).

Ms. Horne's 2022 EEOC and PHRC charge governs a large swath of Defendants' challenges to her Amended Complaint and deficiencies discussed within this Opinion.   Because the Court has found that such claims were not within the scope of the 2022 charge, amendment as to such claims would be futile.  The only remaining claim to survive is Count I against the Health Plan.

Accordingly, based upon the foregoing, the Court concludes as follows:

1. Health Plan's Motion to Dismiss, Count II, III, IV, and V, will be granted.  Any amendment as to those counts will be deemed futile.

2. UPMC's Motion to Dismiss, Counts II, V, VI, and VII, will be granted.  UPMC will be dismissed. Any Amendment as to those counts will be deemed futile.

3. Magee's Motion to Dismiss, Counts II and VII, will be granted.  Magee will be dismissed. Any amendment as to Magee will be deemed futile.

A separate order will follow directing Health Plan to answer Count I of the Amended Complaint.

DATED this 26th day of November, 2025.

BY THE COURT:

_____
MARILYN J. HORAN
United States District Judge